IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


- - - - - - - - - - - - - - - x
                              :
IN RE:                        :
                              :    Case No. 12-30614
JEFFREY V. HOWES,             :    (Chapter 13)
                              :
        Debtor.               :
                              :
- - - - - - - - - - - - - - - x
                              :
JEFFREY V. HOWES, et al.,     :    Adversary No. 13-00510
                              :
        Plaintiffs,           :
                              :
    v.                        :
                              :
WELLS FARGO BANK, N.A., et al., :
                              :
        Defendants.           :    January 6, 2014
                              :
- - - - - - - - - - - - - - - x    Baltimore, Maryland

**(5) Motion to Dismiss Counts One, Three, Four, Five,, Six, Seven and Eight Filed by Christina Trust, a Division of Wilmington Savings Fund Society, FSB**

**(8) Motion to Dismiss Adversary Proceeding Filed by US Bank, National Association, Wells Fargo Bank, N.A.**

**(11) Response on Behalf of Jeffrey V. Howes, Tonya H. Howes Filed by Robert Haeger**

**(12) Response on Behalf of Jeffrey V. Howes, Tonya H. Howes Filed by Robert Haeger**

**(16) Amended Motion to Dismiss Adversary Proceeding Filed by Carrington Mortgage Services, LLC**

**(17) Response on Behalf of Jeffrey V. Howes, Tonya H. Howes Filed by Robert Haeger**

BEFORE THE HONORABLE ROBERT A. GORDON


Proceeding recorded by electronic sound recording, transcript produced by transcription service.

```
APPEARANCES:                    ROBERT HAEGER, Esq.
                                Haeger Law
                                11403 Seneca Forest Circle
                                Germantown, Maryland  20876
                                  On Behalf of the Debtor/Plaintiffs
                                  Jeffrey Howes, Tonya Howes

                                DOUGLAS B. RILEY, Esq.
                                Treanor, Pope & Hughes, P.A.
                                500 York Road
                                Towson, Maryland  21204
                                  On Behalf of Wells Fargo Bank, N.A.
                                  and US Bank, National Association

                                KYLE JAMES MOULDING, Esq.
                                MICHAEL T. CANTRELL, Esq.
                                McCabe, Weisberg and Conway, LLC
                                312 Marshall Avenue
                                Suite 800
                                Laurel, Maryland  20707
                                  On Behalf of Christina Trust, a
                                  Division of Wilmington Savings
                                  Fund Society, FSB and Carrington
                                  Mortgage Service, LLC

Audio Operator:                 Booker Livingston

Transcription Company:          CompuScribe
                                5100 Forbes Boulevard
                                Suite 101
                                Lanham, Maryland  20706
                                301/577-5882
```

cch                                                                      3

# I N D E X

                                                                   Page

Preliminary Matters                                                  4

Comments by the Court                                               5

Arguments:

By Douglas Riley, Esq.
  on Behalf of Wells Fargo Bank and US Bank                        6

By Kyle Moulding, Esq.
  on Behalf of Carrington Mortgage Services
  and Christiana Trust                                             16

By Robert Haeger, Esq.
  on Behalf of Jeffrey Howes and the Plaintiffs                    19

KEYNOTE:  "---" indicates inaudible in the transcript.
          "*"   indicates phonetically spelled in transcript.

cch                                                                          4

1                        P R O C E E D I N G S

2           THE CLERK:  Silence please, all rise.  The United

3    States Bankruptcy Court for the District of Maryland now

4    resumes its regular session.  The Honorable Robert A. Gordon

5    presiding.  Please be seated.

6           We have the case of Jeffrey Howes, Case No.

7    12-30614, Adversary 13-00510.

8           Counsel, will you please identify yourself and your

9    client for the record.

10          MR. HAEGER:  Good afternoon, Robert Haeger on behalf

11   of Jeffrey Howes and the Plaintiffs in the adversary

12   proceeding.

13          THE COURT:  Hi, Mr. Haeger, how are you?

14          MR. HAEGER:  Fine, thank you, and yourself?

15          THE COURT:  Good.

16          MR. RILEY:  Afternoon, Your Honor, Douglas Riley on

17   behalf of Wells Fargo Bank and US Bank.

18          THE COURT:  Hi, Mr. Riley, how are you doing?

19          MR. RILEY:  Good, thank you.

20          MR. MOULDING:  Good afternoon, Your Honor,

21   Kyle Moulding on behalf of Carrington Mortgage Services and

22   Christiana Trust.  And I have with me today Michael Cantrell.

23          THE COURT:  Okay, wait one second.  How do you spell

24   your name?

25          MR. MOULDING:  K-y-l-e.

1          THE COURT:  K-y-l-e.

2          MR. MOULDING:  M-o-u-l-d-i-n-g.

3          THE COURT:  Okay.

4          MR. CANTRELL:  Good afternoon, Your Honor,

5     Michael Cantrell.

6          THE COURT:  Hi, Mr. Cantrell, how are you doing?

7     All right.  I don't know whether I should say anything to

8     start this off or not.  But I will just make the comment that

9     I think the debtor's time could be much better spent figuring

10    out a way to come up with a workable plan than this complaint,

11    which doesn't mean that the parties on the other side of the

12    table are pristine and pure in all that went on here.

13         But it sort of telescopes the aftermath of the

14    mortgage meltdown, et cetera, et cetera, et cetera, and it is

15    almost slapstick comedy of how to handle commercial paper.  I

16    don't think there is much question about that from party, to

17    party, to party and who is on first and what is on second and

18    all of that with respect to filing proofs of claims and filing

19    foreclosures and all of that business.

20         But the fact remains that the debtors have been

21    living in the house without paying for a long time.  They have

22    a debt that apparently they can't afford.  And even if they

23    win hands down on everything that they say in the complaint,

24    which is very unlikely, they are still going to have to pay

25    the debt.  The debt is not going to go away.

1          So, it is a lot of wasted paper as far as I can see.

2   But having stood on the soapbox for a little while, I guess I

3   will hear from Mr. Riley first.  Do you want to go first?

4          MR. RILEY:  Thank you, Your Honor, again, my name is

5   Douglas Riley and I represent Wells Fargo and US Bank today,

6   the entities that previously owned or serviced the loan now at

7   issue.

8          I wanted to start the same way you just begun, Your

9   Honor, saying this is another one of those cases where, as the

10  saying goes, no good deed goes unpunished.  The lenders have

11  worked with Mr. and Ms. Howes to keep them in their home for

12  more than four and a half years now, since April of 2009,

13  according to their complaint.

14         Mr. and Ms. Howes haven't paid a penny toward their

15  mortgage loan but have lived for free in a very nice house in

16  Howard County that they purchased for $650,000 with borrowed

17  money.  But that they can no longer afford.  They were given a

18  loan modification that reduced their variable interest rate

19  more than five points.  And they were offered a subsequent

20  loan modification that they turned down.

21         And yet despite the lender's good faith and good

22  will here, and even though Mr. and Ms. Howes paid their

23  mortgage from 2001 until 2009, they now have what I would

24  describe as the audacity to ask the Court in Count 2 to

25  determine their mortgage is unenforceable.

1          And in other counts to contend that in spite of

2    their own breach of contract by not paying their mortgage loan

3    for four and a half years, their lenders are now somehow

4    indebted to them for alleged irregularities and filing of

5    proof of claim or not giving them timely notice that their

6    loan has been assigned.

7          THE COURT:  Well, let me ask you a question,

8    Mr. Riley, there is a question that comes up in my mind with

9    respect to your side of the table and hopefully this will help

10   us get to the bottom line on page 9 of your memorandum.

11         You said the opposing argument, there is neither

12   harm nor foul here.  Even if the mortgage was removed from the

13   trust or the trust terminated as is alleged on January 25th,

14   2012, Mr. and Ms. Howes are still indebted to the holder of

15   the note and deed of trust whoever that might be.

16         There is no allegations that Mr. and Ms. Howes have

17   paid their loan.  On the contrary they admit in the complaint

18   that they are in default they are under.

19         If the trust terminated as alleged on January 25th,

20   2012, then its assets returned to Wells Fargo the grantor,

21   which had conveyed them to the trust in the first place.

22         Wells Fargo was, thus, their owner of the mortgage

23   on February 21st, 2012, when the substitute trustees filed the

24   foreclosure case at Wells Fargo's behalf.

25         Okay.  So, let me try and formulate the question.

1   Who owns the mortgage?  Does Wells Fargo -- go ahead.

2           MR. RILEY:  Right now, my colleagues own the

3   mortgage.

4           THE COURT:  Okay.  Say for the record when you say

5   your colleagues, what does that mean?

6           MR. RILEY:  Carrington Bank and the Christiana

7   Trust.

8           THE COURT:  Okay.

9           MR. MOULDING:  Carrington Mortgage Services is the

10  servicer of the loan.

11          THE COURT:  Servicer.

12          MR. MOULDING:  Christiana Trust is the would be the

13  note holder.

14          THE COURT:  Okay.

15          MR. RILEY:  In other words, we are out of it now.

16          THE COURT:  You are out of it now.

17          MR. RILEY:  Except and so far as we filed the

18  original proof of claim and had begun foreclosure proceedings.

19          THE COURT:  Okay.  All right.  The reason I

20  brought -- so, you will know, I mean it is pretty obvious on

21  one level why I brought it up I think but the way you wrote it

22  sounded a little like you weren't sure.

23          MR. RILEY:  No, no, I was very sure.  I was simply,

24  you know this a motion to dismiss.

25          THE COURT:  I know.  But I am giving you some

1  literary license there to write it that way because you are

2  exactly right.  It is a motion to dismiss, yes.  But when I

3  read it, I said, okay, I don't -- who owns it?  Doesn't that

4  get us closer to the bottom line, I think?  It should, I would

5  hope that it would.

6            MR. RILEY:  It is very clear that when the two

7  proofs of claims were filed, that Wells Fargo, at that point,

8  owned it.  The first one was wrong.  It was in the name of US

9  Bank with us as the servicer.  The Howes tried to make a great

10 deal out of that and suggested obviously that it was

11 fraudulent.

12           We discovered the error.  Within a week, we

13 clarified the error.  The Court encourages liberal amendment

14 of pleadings when they are not completely accurate.

15           The best way to track ownership is through the land

16 records up in Howard County, which would show that it began

17 with Columbia Bank and then it went to -- I had a cheat sheet

18 that I left on my desk at home so now I am floundering on that

19 particular part of it.

20           But I have that on a footnote where is sets forth,

21 that shows exactly the chain and then ultimately it was

22 assigned to my colleagues at the table here and to their

23 clients as well.

24           It does seem to me that the core of the complaint is

25 that neither Wells Fargo nor US Bank has standing to foreclose

1   on the property or to object to the Chapter 13 plan or to even

2   file a proof of claim.  And yet as the Court has just pointed

3   out, and I will say time and time again, there really is no

4   harm in anything that has happened.

5           Even if the mortgage was removed from the trust or

6   the trust terminated as alleged on January 25th, 2012, which

7   it did, Mr. and Ms. Howes are still indebted to whoever that

8   holder is.  There is no allegation or complaint from Mr. and

9   Ms. Howes paid the money.  And on the contrary, they admit

10  that they are in default.

11          The law is that when a trust has terminated the

12  asset is returned to the grantor and that in this case is

13  Wells Fargo.  In fact, that is what is in the trust

14  document --

15          THE COURT:  Well, does Maryland Law apply there,

16  though.  You only cited the Maryland case, which is, I don't

17  want to call it an ancient case but it was dealing with wills

18  and trusts and reversionary interest and, et cetera, et

19  cetera.  And they use a lot of language that I couldn't

20  understand.

21          MR. RILEY:  Okay.  Well, it is also in the trust

22  document, which is not before the Court, that has now been

23  sent to me.  And I didn't want to introduce it because it is

24  not at that stage.  If we end up in motion summary judgment

25  stage, which may happen after this, I will present it.  But it

1  also says this is what happens when the trust is terminated

2  and in that case it all goes back to grantor, which is Wells

3  Fargo.

4          THE COURT:  Okay.  So, for purposes of this hearing,

5  it may not be Maryland Law that governs it or is it the case

6  that it is not Maryland Law?  You might be right as a general

7  principle.  That may be the law across the country or in

8  Delaware or wherever.

9          MR. RILEY:  It may not be Maryland Law.

10         THE COURT:  Okay.

11         MR. RILEY:  Frankly, I think it is so obvious that

12  that is what the law of trust is that I just cited that one

13  case.

14         THE COURT:  I would think that too but you never

15  know Mr. Riley, right?  I don't mean that facetiously.  I mean

16  we don't know for sure unless we know for sure.

17         MR. RILEY:  I agree, Your Honor, and if you would

18  like us to further brief that issue, I would be happy to do

19  that.

20         THE COURT:  Okay.

21         MR. RILEY:  Okay.  So, I don't know quite how to

22  proceed from here.  I would like to discuss each of the

23  specific allegations.

24         THE COURT:  Go ahead, sure.

25         MR. RILEY:  Counts 1, 2, 3, 4, 7, 8 and 9 of the

1    complaint in my view border on the privilege because of what

2    we have just been talking about.  They are based on unfounded

3    contentions that Wells Fargo was not the rightful owner of the

4    note and therefore lack standing to collect the amount due to

5    initiate the foreclosure case to object to Mr. Howes' Chapter

6    13 plan or to file an amended proof of claim.

7            THE COURT:  Well, as best I can tell, if I am

8    talking about those counts, because it is confusion, all

9    right, and that is not entirely the Plaintiff's fault.  It is

10   a confusing situation.

11           But it seems to me that is what being alleged is

12   that either Wells Fargo defrauded the debtor and his wife by

13   claiming that -- by taking a position inconsistent with the

14   fact that the trust had terminated and they did this to hide

15   the foreclosure fees.  Is that right or is that wrong?

16   Mr. Riley.

17           MR. RILEY:  Again, --

18           THE COURT:  No, no, I am not asking you whether it

19   is true or not.  I am saying is that what the allegation -- is

20   that the way you read the allegation?

21           MR. RILEY:  I think that is the way we read the

22   allegation.  But under Twombly it has got to be a credible

23   allegation and it is just incredible that anything even if the

24   proof of claim had the wrong name on it, that somehow the

25   debtor was wrong and, obviously, if it has been corrected

 1  since then.  So, the fact of proof of claim was filed and then

 2  amended correctly just doesn't state a cause of action.

 3          There is much about a first foreclosure that was

 4  filed long before I was involved in the case with affidavits

 5  that are alleged to have been signed by the guy who is signing

 6  all of the affidavits.  You know that whole things was a

 7  travesty.  But Wells Fargo, on learning of it, followed, at

 8  least in Maryland, our advice and dismissed all of those

 9  cases.

10          I mean it said this was wrong.  And there is no harm

11  there.  And then the new foreclosure started and under the ---

12  parties and on it went.  So, again, there is just no harm

13  being done in any of those.  And that is with regard to all of

14  those counts.  I am not going to beat a dead horse and go over

15  each one of them.

16          Count 4 of the complaint should be dismissed because

17  the proof of claim does not include an illegal inspection fee.

18  This is a case of clever pleading by Mr. and Ms. Howes where

19  they acknowledge that what we are collecting is an appraiser,

20  broker's price opinion fee.  But then they just

21  recharacterized it in their brief as an inspection fee without

22  offering any kind of evidence to the contrary.  And that

23  concludes --

24          THE COURT:  Well, what I got in the end was that

25  they were saying that somehow you were wrong because you

1    didn't assert that it wasn't an inspection fee.

2              MR. RILEY:  What we have done is filed a proof of

3    claim and that proof of claim is before the Court and it is

4    signed under oath and it says that the fees we collected were

5    appraiser, broker's price opinion fees on everything that is

6    necessary in the proof of claims in front of the Court.

7              THE COURT:  And how much were they about $900 or

8    less?

9              MR. RILEY:  I think they were $320.

10             THE COURT:  Okay.  So, that is really going to turn

11   the case around, isn't it?

12             MR. RILEY:  So, I don't there is anything to be

13   gained by pursuing that.   And in so far as they want to

14   object to the proof of claim, which they have done in this

15   pleading, there is a process for doing that.

16             Count 5 of the complaint should be dismissed because

17   it is claimed under --- as time barred.  Again, my brief cites

18   all the law on that --

19             THE COURT:  Right but they say that there is a

20   recoupment available.

21             MR. RILEY:  There may be a recoupment available as a

22   defense.  And that comes up as when we sue them to collect.

23   Although anything over what we have got a foreclosure is going

24   to be discharged anyway.

25             THE COURT:  But they don't have an affirmative

1  claim?

2          MR. RILEY:  But they don't an affirmative claim.

3          THE COURT:  Okay.

4          MR. RILEY:  And so we don't think that there is any

5  merit in that particular count.  Count 6 is also a count under

6  the Fair Debt Collection Procedures Act, which is clearly time

7  barred.

8          Interesting, they then -- and I should say that

9  Counts -- I think their count under the Maryland's Consumer

10 Protection Act is also time barred.  They say, well, wait, we

11 looked back the violation that the Federal Debt Collection

12 Procedures Act and even though that is time barred, we can

13 still use that as a basis under the Maryland Consumer

14 Protection Act.  And is clearly there is no grounds in that.

15 Clearly, it is time barred.  So, I don't think there is

16 anything there.

17         And then the other point that you already made and I

18 will just make quickly is Count 8 of the complaint contends

19 that Wells Fargo and US Bank violated Maryland Consumer

20 Protection Act by falsely and wrongly asserting ownership of

21 the note to moneys due and in the second foreclosure action.

22         And to bring an action under Maryland Consumer

23 Protection Act, there must be alleged an unfair and deceptive

24 practice or misrepresentation, which is arguably there.  But

25 it is then relied upon to cause injury.

1            And the complaint does not allege any reliance or at

2    least any credible reliance.  So when you go through the whole

3    thing, Mr. and Ms. Howes complaint provide no basis for their

4    claims that Wells Fargo is not a holder of the note to the

5    alleged Counts in 1 and 2 or has filed defective proof of

6    claim as alleged in Count 3, or has falsely stated that

7    Mr. Howes is liable to Wells Fargo for $740,000 as alleged in

8    Count 6, or has sought to collect from Mr. and Ms. Howes

9    amounts that knows are unlawful under Count 7, or has falsely

10   asserted ownership of the note as alleged under Count 8.

11           Wells Fargo has standing to file its proof of claim

12   and the other counts are barred by limitation.  So, we agree

13   with you.  We would like this bankruptcy case to proceed.  We

14   would love to get paid some of our arrearage.  We would like

15   to be able to go forward with foreclosure if we can't work

16   something out.

17           THE COURT:  It is not yours anymore, right?

18           MR. RILEY:  Yes, absolutely, Your Honor.  I have

19   gotten carried away there.  It is not ours.  And so I take

20   back that last part.  We don't care one way or the other

21   except that we did assign it and would certainly like our ---

22   to be treated fairly.  Thank you very much, Your Honor.

23           THE COURT:  All right, I got you.  All right, anyone

24   want to speak for Carrington, et cetera?

25           MR. MOULDING:  Good afternoon, again, Your Honor.

1            THE COURT:  Okay.

2            MR. MOULDING:  We, of course, would like to

3    incorporate everything that Wells Fargo has just stated to the

4    Court in their motion to dismiss and in his representations to

5    the Court this afternoon.

6            So to begin, we would like to request that Counts 1,

7    3, 4, 5, 6, 7, and 8 as to Carrington Mortgage Services be

8    dismissed as there is nothing alleged to Carrington Mortgage

9    Services.  And then 1, 3 and 8 as to Christiana Trust because

10   there is also nothing that the Plaintiff is bringing forward

11   against Christiana Trust on those counts.

12           And I will begin with Count 4, the property and

13   inspection fees.  And we agree with everything that Wells

14   Fargo has said about the property inspection fees.  To add to

15   that Christiana Trust had no involvement in any of that.  That

16   all happened before the loan was transferred to Christiana

17   Trust with Carrington servicing the loan.

18           They didn't have any knowledge of any of this.  They

19   just sort of walked into this when they filed their transfer

20   of claim back in June.

21           Moving onto Count 6, debtor's counsel has identified

22   WSFS Bank and FDCPA claim and they are the note holder and not

23   the servicer.  And it is our contention that they are not

24   subject to FDCPA as a result of that because they are not a

25   debt collector.  And they don't meet the definition of debt

18

 1   collector under the statute.

 2          And furthermore, there are no facts involved at all

 3   alleging that WSFS Bank and Christiana Trust has done anything

 4   that violated the FDCPA to this point.  Only the fact that we

 5   have for WSFS Bank at this point is that they have filed a

 6   transfer of claim and they didn't do anything improperly under

 7   the FDCPA.

 8          And then moving onto Count 7, under the Maryland

 9   Consumer Debt Collection Act.  The Maryland Consumer Debt

10   Collection Act requires knowledge as to the invalidity of the

11   debt and nothing has been pled as to the knowledge acquired by

12   my client as to any of this invalidity, the property

13   inspection fees, any of that, any of those facts that were in

14   the complaint.

15          Nothing has been pled as to the knowledge obtained

16   by my client prior to filing the transfer of claim because,

17   again, that is all that my client has done to this point.  And

18   I have a case cite for you that I did not have in the motion

19   to dismiss.  If you would like it for the knowledge --

20          THE COURT:  No.

21          MR. MOULDING:  That is all we have for now.  I don't

22   want to repeat anything that counsel has already said.

23          THE COURT:  Okay.  Mr. Cantrell?

24          MR. CANTRELL:  No, Your Honor, I pass.

25          THE COURT:  Okay, go ahead.

1              MR. HAEGER:  Thank you, Your Honor.  Well, I would

2    say that the first point that I would like to make is that

3    this is order paper and there has been no negotiation out of

4    US Bank.

5              THE COURT:  What is the fraud?

6              MR. HAEGER:  The fraud --

7              THE COURT:  Why don't you tell me what the fraud is?

8              MR. HAEGER:  The main fraud is trying to hide the

9    fact that there was no standing to file the foreclosure case.

10             THE COURT:  How did your clients rely on that?  And

11   have they been damaged by it?

12             MR. HAEGER:  Well the fraud is alleged in connection

13   with fraud on the Court.

14             THE COURT:  No, you say on the debtors, that is what

15   your complaint says.  You say well it all goes back to when

16   they told us we were going to work out a settlement with you

17   and then they said we couldn't work out a settlement with you.

18   And my client put all this time and effort.  So, all of that

19   happened before.

20             MR. HAEGER:  Well, that is separate -- that is

21   correct.  That is a separate --

22             THE COURT:  Yes, all that happened before what you

23   just talked about.  So, what is the fraud?

24             MR. HAEGER:  So, I would say that there are two

25   areas.  The first area and the most important area is the

1   fraud on the Court by not disclosing the fact that there was

2   no standing to file that second foreclosure case.

3          THE COURT:  Because the trust terminated?

4          MR. HAEGER:  That is correct, Your Honor.

5          THE COURT:  So, what happened to the mortgage or the

6   note after the trust terminated?

7          MR. HAEGER:  The Plaintiffs would love to know.

8          THE COURT:  That is not an answer.  As a lawyer,

9   what happened to it?

10         MR. HAEGER:  Well, as a lawyer --

11         THE COURT:  What would be the law in that

12  circumstance?

13         MR. HAEGER:  As I set forth in my response the loan

14  was transferred out of the trust before the trust terminated.

15         THE COURT:  Well, in one area of the response you

16  say the mortgage was paid in full?  Is that what happened?

17         MR. HAEGER:  The records that were filed with the

18  complaint indicate that mortgage was paid in full.  I think

19  that is paid in full to the trust.

20         THE COURT:  The allegations -- this is page 22.  The

21  allegations of the complaint made clear the mortgage was paid

22  in full and removed from the trust.  But provides nothing from

23  which to infer the identity of the subsequent owner.  Indeed,

24  that is the point of Count 2 to establish the true owner of

25  the mortgage.  So, it was paid in full?

1          MR. HAEGER:  That is what the exhibit that is cited

2   in that section states.

3          THE COURT:  Well, what exhibit is that?

4          MR. HAEGER:  I am afraid I don't have that in front

5   of me, Your Honor.  It is on my computer --

6          THE COURT:  Well, you are not seriously taking the

7   position that it was paid in full, are you?

8          MR. HAEGER:  No.  That it was paid in full vis-a-vis

9   the trust.  Wells Fargo is arguing that the loan reverted back

10  to the grantor.

11         THE COURT:  So, you are saying that they are trying

12  to -- Wells Fargo intentionally misrepresented their status

13  because the trust was terminated?

14         MR. HAEGER:  That is right.

15         THE COURT:  And what were they gaining from that,

16  Covering up the $2,000 in foreclosure fees?

17         MR. HAEGER:  I have seen people do strange things.

18  And --

19         THE COURT:  No, you are the Plaintiff.  What were

20  they gaining from that?  Why did they conduct -- why did they

21  commit the fraud, per your allegations?

22         MR. HAEGER:  The main motivation would be to

23  preserve the foreclosure, the fact that they filed the

24  foreclosure case that it was a rightful foreclosure when it

25  wasn't, and to preserve the fees they sought to collect as a

1  result of that.  You look at their behavior and you scratch

2  your head.  What is going on here.  Why are they doing what

3  they are doing?

4           THE COURT:  That doesn't make it fraud.  Fraud is

5  serious.  Fraud allegations serious business.

6           MR. HAEGER:  I agree.

7           THE COURT:  Right.  So, if it doesn't amount to

8  that, then you have to expect me to take it very seriously

9  when somebody alleges fraud in this Court and it is not.

10          MR. HAEGER:  I have taken it seriously.  Plaintiffs

11  have taken it seriously, Your Honor --

12          THE COURT:  I don't get that from your complaint.

13  This looks like one unfortunately incident after another that

14  mortgage lenders and banks were engaging in the aftermath or

15  maybe as a part of the mortgage meltdown.

16          But your clients' problems started because they

17  couldn't pay the debt.

18          MR. HAEGER:  Caused by the mortgage companies.

19          THE COURT:  Why, because you say that?  There is no

20  detailed explanation of that.  He is in the same boat as a lot

21  of other people.

22          MR. HAEGER:  Right.

23          THE COURT:  But that doesn't mean that they

24  committed fraud in this situation.

25          MR. HAEGER:  That is correct I agree with that.

1          THE COURT:  You can't pay the mortgage, you are

2     living in a house that you can't afford just like a lot of

3     people.  And that is a bad thing.   That is not a good thing.

4     That is not a good thing, all right?  I am not belittling

5     that.

6          But to file a complaint like this and think that

7     that is going to be the solution.  The debt is still there.

8     Someone owns it.  And they have to pay it.  And it seems to me

9     you would spend a lot -- your time would be much better spent

10    trying to help them figure out how they are going to get that

11    done if they want to stay in the house.

12         Maybe you might have a colorable claim on some of

13    these nitpicks, okay?  But to accuse them of fraud because

14    they filed a proof of claim and they are trying to cover up

15    the fact that the trust didn't exist anymore.  The assets had

16    to go somewhere period.

17         MR. HAEGER:  Then why didn't they disclose that?

18         THE COURT:  They said that they did disclose it.

19    That they were the owner of the asset because the trust

20    evaluated.  So, it reverted to them.  That is the position

21    they are taking.  It is entirely reasonable.

22         MR. HAEGER:  But, Your Honor, this is order paper

23    and you can't share ownership in that way.  It is clear under

24    the Anderson v. Berkson* case exactly what they have to do.

25    And they --

1    THE COURT:  Your clients have a long way to go to

2  figure out how to pay this debt.  Rather than turning this

3  into Brown v. Board of Education.  If you think that their

4  time is well spent and that the money that you are billing

5  them for is well spent then God bless the entire situation.

6    But what I am going to do is I am going to take a

7  real close look at this.  And I am going to take a close look

8  at the legal authorities.  And I am going to come back in

9  about 45/60 days and make an oral ruling.  So, I hope this

10  thing stands up under scrutiny because reading through it, it

11  doesn't.

12    MR. HAEGER:  Can I also point out, Your Honor, that

13  Count 4, the inspection fees, that is not a $900 count.  If

14  they prevail on that --

15    THE COURT:  The proof of claim doesn't say that they

16  are inspection fees.

17    MR. HAEGER:  And if I could address --

18    THE COURT:  You say, well, I think they are

19  inspection fees because they had to be inspection fees.

20  Notwithstanding what the proof of claims says.  How could they

21  be appraisal fees?

22    MR. HAEGER:  If I could address that?

23    THE COURT:  Would they have needed to appraise it

24  this many times, in this shorter period of time, therefore,

25  they must be inspection fees.  And, therefore, they are

1   illegitimate.

2            MR. HAEGER:  Well, the Plaintiffs have wanted to get

3   to the bottom of it.  And they served qualified written

4   requests on the Defendants.  And they asked for a life of loan

5   transaction history.  And so far none has been provided.  Now

6   that would help clarify the issue.

7            Secondly, they also asked for a copy of these

8   valuations.  That would help to substantiate whether or not

9   they are valuations or inspection fees.

10           Wells Fargo stated in a November 13, 2013, response

11  that the valuations are confidential and will not be released.

12  And then the third point on the inspections fees, and this all

13  goes to leave to amend in the event that the Court is inclined

14  to dismiss Count 4, Wells Fargo added over $500 in undisclosed

15  fees to their claim after the amended claim was filed but

16  before it was transferred to Carrington.

17           Plaintiffs believe that what we have here is a case

18  of tracking and tacking.  That the inspection fees were tacked

19  on before the claim was transferred to Carrington.  We have

20  seen this in other cases.

21           So, the reason that Count 4 is so important and why

22  it would turn this case around and make this loan much more

23  affordable is that if they prevail on Count 4, there is no

24  interest.  No interest can be charged on the loan.  All

25  interest is forfeit under the commercial law article.

1            THE COURT:  Anything else you want to tell me?

2            MR. HAEGER:  Everything else is stated in my

3  response, Your Honor, but I would be happy to walk through it

4  if the Court has any other questions.

5            THE COURT:  Anything from this side?

6            MR. RILEY:  Nothing further from Wells Fargo and US

7  Bank, Your Honor.

8            THE COURT:  All right, let's pick a date.  March 4th

9  at 2:00 p.m., is that all right?

10            MR. HAEGER:  That is fine by me, Your Honor.

11            MR. RILEY:  That is fine by me also, Your Honor.

12            MR. MOULDING:  That will be fine, thank you.

13            THE COURT:  Okay, all right.  We will come back for

14  an oral ruling March 4th, at 2:00 p.m.

15            MR.      :  Your Honor, if I may, I believe the

16  scheduling order requires that --- by January 8.  May I make a

17  request be made --- from now and March 4, it would have to

18  made ---.

19            THE COURT:  Well, why don't we just stay the

20  scheduling until we have that hearing.

21            MR.      :  Very well, thank you.

22            THE COURT:  All right.  And Mr. Riley, if you want

23  to provide a supplement on the question of the trust

24  termination and what happens and the result of that, I would

25  be happy to take a look at it.  So, why don't you have 15 days

1    to file a supplement on that and the Plaintiffs can have 15

2    days to respond to it.

3              MR. RILEY:  Very good, Your Honor.

4              THE COURT:  All right.  All right, anything else?

5              MR. RILEY:  No, Your Honor.

6              MR. HAEGER:  No, Your Honor.

7              THE COURT:  All right, thanks.

8              THE CLERK:  All rise, please.

9              (Whereupon, the hearing was recessed to reconvene on

10   March 4 at 2:00 p.m.)

cch                                                                        28

## C E R T I F I C A T E

  I certify that the foregoing is a correct transcript from the duplicated electronic sound recording of the proceedings in the above-entitled matter.

_____
_Cora Holliday_     09-08-2014
Cora C. Holliday, Transcriber     Date