Date signed November 05, 2014



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Jeffrey V. Howes | * | Case No. 12-30614-RAG |
| Debtor | * | Chapter 13 |

\*   \*   \*   \*   \*   \*   \*       \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| Jeffrey V. Howes and Tonya H. Howes | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | Adversary No. 13-00510-RAG |
| | * | |
| Wells Fargo Bank, N.A. | * | |
| U.S. Bank, N.A. | * | |
| Carrington Mortgage Services, LLC | | |
| Christiana Trust, a Division of | * | |
| Wilmington Savings Fund Society, FSB | | |
| | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*       \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION IN SUPPORT OF ORDERS
### DISMISSING COMPLAINT AND DENYING MOTIONS TO RECONSIDER

**I**.        **Preliminary Statement**

On July 22, 2014, this Court entered an Order Denying Plaintiff's Motion to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit (Order Denying Reconsideration) (Dkt. No. 36).  The Order Denying Reconsideration reaffirmed the ruling embodied in the Order Dismissing Complaint for Failure to State a Claim (Order Dismissing) entered on May 12, 2014 (Dkt. No. 28).  The Order Dismissing memorialized a March 4, 2014 oral ruling (March 4th Ruling) and provided as follows:

> This Adversary Proceeding was commenced by the filing of a Complaint to Determine Secured Status, Sanctions, and Other Relief (Complaint) on September 3, 2013.  Underlying the Complaint is (1) the theme that as a result of the assignments of the loan documents (including to a securitized trust), the Plaintiffs "do not know" which one of the Defendants is entitled to receive their residential mortgage payments and (2) their somewhat contradictory yet corollary efforts to establish that at some point, the trust terminated and/or the assignments were somehow botched, so that none of the Defendants are legitimately entitled to enforce the obligation and/or may owe the Plaintiffs damages for "fraud" and technical violations of consumer protection laws.  None of the alleged claims are grounded in substantive rights created by the Bankruptcy Code.

> *        *        *

> [In the March 4th Ruling], the Court stated that Count I would be dismissed with prejudice because the Plaintiffs failed to state,  and could not assert, a legitimate claim for fraud and that the remaining claims would be dismissed without prejudice pending (a) Carrington's and Christiana's provision of proof of ownership of the defaulted note and mortgage secured by the Plaintiffs' residence and (b) an opportunity to the Plaintiffs to file either an objection to claim, an amended complaint, or both, that assert legitimate, non-specious claims for relief.

As of March 4th, Defendants Carrington Mortgage Services, FSB (Carrington) and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 (Christiana) were respectively the holder and servicer who

2

claimed to be entitled to enforce the November 30, 2001 Deed of Trust (DOT) against Plaintiffs' home.[1]  They were given until April 3, 2014 to, "submit an affidavit that (1) explains their claim of ownership to the note and mortgage (sic) that underlie Claim No. 4-2 and . . . (2) supplies an inventory of documents that memorializes their chain of title . . . ."  Thereafter, Plaintiffs were given until May 3, 2014 to file either an objection to claim, an amended complaint, or both.

Carrington and Christiana facially complied with the April 3rd deadline by filing the Line and Affidavit.  Eschewing compliance, Plaintiffs instead filed: (a) on May 5, 2014 a Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit (First Motion to Reconsider) (Dkt. No. 27) and (b) on May 27, 2014 a Motion to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit (Second Motion to Reconsider) (Dkt. No. 34).  Those motions raised identical arguments and were heard, and orally denied, on July 16, 2014.  The Order Denying Reconsideration embodies that ruling.  It also afforded Plaintiffs seven (7) days to either file an amended complaint, an objection to claim, or both.  If they did not meet the deadline, the Order Denying Reconsideration provided that this Adversary Proceeding would be dismissed with prejudice.  The Oversigned fully expected Plaintiffs to file an amended complaint by the deadline to seek redress for the remaining alleged wrongs they claim to have suffered.  However, Plaintiffs again declined to file an amended complaint (or objection to claim) and instead filed a Notice of Appeal (Dkt. No. 38).  Because this Court orally explained its two prior rulings, it was decided that a written opinion would aid the decisional process on appeal, see *Grand Jury Proceedings Under Seal v. United States,* 947 F. 2d. 1188,

---

[1] The proofs of claim and related documents that rely upon the DOT and its companion Construction Note (Note) (also dated November 30, 2001) are included at Claim No. 4 on the Claims Register in Case No. 12-30614 (Main Case) and are also listed in the Line and Affidavit Certifying Ownership of Debt Instrument (Line and Affidavit) filed by Carrington on April 3, 2014 at Dkt. No. 26 in this Adversary Proceeding.  It appears from the Assignment of Claims Transfer Agreement filed on July 14, 2014 at Dkt. No. 116 in the Main Case that a new mortgage servicer, Selene Finance, LP (Selene) (which may also be a trade name of an existing party), may have been appointed.

1190 (4th Cir. 1991) and this Opinion was drafted to that end.  Two questions relevant to the

appeal are presented: (1) whether Count One of the Plaintiff's Complaint to Determine Secured

Status, Sanctions and Other Relief (Complaint) alleged, or could be amended to allege, a

meritorious claim for fraud and (2) assuming that it did not (and could not) whether under the

circumstances of this Adversary Proceeding, this Court was invested with sufficient discretion to

require that an amended complaint be filed promptly and, if it was not, dismiss the Complaint

with prejudice.

## II.    The Bankruptcy Case

Plaintiff-Debtor, Jeffrey V. Howes, filed his Voluntary Petition for relief under Chapter

13 of the Bankruptcy Code on November 15, 2012.[2]  Mr. Howes listed his residence at 7000

Meandering Stream Way, Fulton, MD, 20759 (Residence) on his Schedule A and valued it at

$650,000 (Dkt. No. 14).  Mr. Howes also listed over $306,944.02 in personal property on

Schedule B, including over $264,000 in stock and equity funds, with approximately $160,000 of

that sum in what appear to be liquid accounts.  He did not list any claims, causes of action or

rights of setoff against any of the Defendants in this Adversary Proceeding.  To the contrary, he

answered "none" in response to each relevant question on his Schedule B.[3]  Wells Fargo Home

Mortgage (Wells Fargo Servicer) was listed by the Debtor as the servicer of the mortgage against

the Residence, albeit with its claim disputed.  A total of $27,920.70 in unsecured debt was listed

---

[2] This Court relied in part upon knowledge of the record of the Main Case in entering the orders on appeal.  As courts "may properly look beyond the complaint only to items in the record of the case or to matters of general public record[,]" *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1998) when ruling upon a motion to dismiss for failure to state a claim, such reliance is appropriate.

[3] Debtor also attached a lengthy "Exhibit" to his Schedules.  The Exhibit seeks to confirm that the information included in the schedules is without prejudice to the alleged rights later asserted in this Adversary Proceeding while also under-cutting Debtor's affirmance under oath and penalty of perjury of the truthfulness of certain of the information included in the Schedules.

in Schedule F.[4]  Debtor and his wife own their own business, Green Delivery Service, Inc., and, per Debtor's Schedule I, have gross monthly income of $6,800.  The Debtor listed monthly home mortgage payments of $4,870 on his Schedule J and a net monthly income of $310.[5]

Debtor filed his Chapter 13 Plan (Plan) on December 13, 2012 (Main Case, Dkt. No. 13). Debtor represented in the Plan that he would pay $1,157 per month to the Trustee with $1,018 of that to be paid to Wells Fargo over thirty-five (35) months to cure an alleged arrears of $35,662.[6] However, on March 8, 2013, Wells Fargo Servicer, through its attorney Brian McNair, Esquire, filed a Proof of Claim (Claim No. 4-1).  Claim No. 4-1 identified US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 (US Bank as the creditor, meaning, as stated in the claim, "the person or other entity to whom the debtor owes money or property."  Claim No. 4-1 asserted that $740,334.24 was owed to US Bank by the Debtor and that the claim was secured by a deed of trust against the Residence.  It was also asserted that the tidy sum of $200,196.79 was in arrears.  Seven days later, on March 15, 2013, Wells Fargo Servicer filed an Amended Proof of Claim (Claim No. 4-2), also through Mr. McNair, but this time on behalf of creditor Wells Fargo Bank, N.A. (Wells Fargo Bank).

---

[4] Only one general unsecured claim of $560.80 was filed and total unsecured claims (including priority claims) have been reduced to less than $3,000 due to resolved objections.

[5] While $4,870 is listed as a monthly expense, Plaintiffs had not paid this obligation for over seven years prior to the commencement of the Main Case and have not paid it since the Main Case was filed.  Debtor also attempted to exempt a total of $104,763 in property per his Schedule C.  That figure is well in excess of even the most liberal, arguable exemption ceiling.  The Trustee objected to this on January 3, 2013 in the Main Case (Dkt. No. 22). Debtor did not respond directly to the objection but did file an Amended Schedule C on January 15, 2013 that significantly reined in his blatant overreach.

[6] The Plan also included verbiage that was intended to, in large part, exempt him from the potential impact of *res judicata* upon confirmation.  An Amended Chapter 13 Plan (Amended Plan) was filed on October 4, 2014 (Main Case, Dkt. No. 83).  In it, the Debtor represented that he would pay $321 per month to the Trustee and the verbiage was eliminated.  Instead, there is an acknowledgement in the Amended Plan that the outcome of this Adversary Proceeding will likely impact upon the Amended Plan.  Because of the obvious roadblock presented by this Adversary Proceeding, the Court has put confirmation on hold pending final resolution of the Complaint.

Claim No. 4-2 was otherwise identical to Claim No. 4-1.  However, while Claim No. 4-1 was devoid of underlying documentation, Claim No. 4-2 included (1) a mortgage proof of claim attachment that gave a detailed statement of the alleged debt included a mélange of charges and fees allegedly assessed because of the Debtor's default and the resulting foreclosures, (2) redacted loan documents, including copies of the Note,[7] the DOT and an Allonge dated November 21, 2009 that identifies Wachovia as the "Present Holder" (and indicates an intent to assign the Note without recourse to US Bank) and (3) informational correspondence from Wells Fargo Servicer.  The Note and DOT are signed by the Debtor and his wife.  Claim No. 4-2 was thereafter impacted by three Transfers of Claim Other than for Security filed in the Main Case at Dkt. Nos. 51, 57 and 65, respectively, pursuant to Bankruptcy Rule 3001(e)(2).  Dkt. No. 51 (Transfer No. 1) was dated and filed May 29, 2013 and purported to memorialize the transfer of Claim No 4-2 from Wells Fargo Bank to Carrington.  Dkt. No. 57 was dated and filed June 11, 2013 and purported to amend Dkt. No. 51 by memorializing the transfer of Claim No. 4-2 from Wells Fargo Bank to Christiana.  Dkt. No. 65 is dated July 10, 2014, was filed on July 14, 2014 and purports to memorialize the transfer of Claim No. "4" (filed on March 8, 2013) from Carrington to Christiana c/o Selene.

On April 2, 2013, Debtor filed an Objection to Allowance of Claim filed by Wells Fargo Bank, N.A. (Objection to Claim) (Main Case, Dkt. No. 36).  The Objection to Claim was no more than two substantive pages long and its primary thrust was that because there was no apparent endorsement of the Note from US Bank to Wells Fargo Bank, Wells Fargo Bank was

---

[7] On the signature page of the Note, it is endorsed without recourse by the Columbia Bank (Columbia) to Wells Fargo Servicer and then by an unidentified entity (through its Assistant Secretary) also to Wells Fargo Servicer and it is also endorsed to no one in particular by Wachovia Bank, National Association, (Wachovia) as Trustee under the pooling and servicing agreement dated as of May 2003.

not a creditor of Mr. Howes and did not have standing to file a proof of claim.[8]  Neither Wells

Fargo Bank, nor anyone else, filed a response to the Objection to Claim.  Nevertheless, on June

17, 2013, the Court held a hearing on the same (Main Case, Dkt. No. 62).  Among other things,

the hearing was held because it was apparent that the Objection to Claim had not been served on

all the potential parties in interest.[9]  Moreover, during the hearing, Mr. Haeger suggested that

perhaps the Objection to Claim should be supplanted by an adversary proceeding because the

Debtor's attack would likely draw into question the "extent" of the lien.  Transcript of Hearing at

5 (June 17, 2013) (Main Case, Dkt. No. 132).[10]  See Federal Rules of Bankruptcy Procedure

Rule 7001(2).[11]  Over two months later, on September 3, 2013, the Complaint was filed,

commencing this Adversary Proceeding.[12]

## III.    The Adversary Proceeding

At the beginning of its factual recitation, the Complaint acknowledges that Mr. and Mrs.

Howes entered into the DOT and Note with Columbia and that the Residence was secured

thereby.  The Plaintiffs also admit that they, "suffered a decline in income in 2008 as a result of

the Great Recession, [had] insufficient income to cover the Note payments [and had to use] their

---

[8] The Objection to Claim also asserted that (a) certain payments by Mr. Howes had not been credited and (b) foreclosure costs could not be recovered because the underlying foreclosures were filed by entities who lacked standing to enforce the DOT and Note.  On May 15, 2013, Wells Fargo Bank withdrew its November 9, 2012 entry of appearance and request for notice in the Main Case (Dkt. Nos. 9 and 49).  Transfer No. 1 was filed fourteen days after Wells Fargo Bank's withdrawal of its entry of appearance.

[9] The Objection to Claim could not have been served on the additional parties when it was filed because those parties had not then entered the proceeding.

[10] Since then, Mr. Haeger has said or implied more than once on the record that the Oversigned suggested or recommended the filing of this Adversary Proceeding.  The Court has mistakenly said the same thing on the record at least once. However, the transcript of the June 17, 2013 hearing sets the record straight.

[11] An objection to claim may be included in an adversary proceeding. See Federal Rules of Bankruptcy Procedure Rule 3007(b).  The Objection to Claim was denied without prejudice on June 24, 2013.  From this point forward, unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

[12] The confirmation hearing on Debtor's Amended Plan was scheduled for the day after the Complaint was filed.

savings to bridge the gap until their savings were exhausted." They further admit that they "defaulted on the Note on April 2, 2009, and then fell more than 60 days behind in June 2009." The Complaint then summarizes approximately four years of fruitless, and no doubt frustrating, loan modification negotiations with Wells Fargo.[13] Per the Complaint, these negotiations continued after Wells Fargo began to foreclose. Plaintiffs essentially take the position (laden with dense jargon from the Home Affordable Modification Program (HAMP)) that the attempted modification failed either because of the hardheadedness, incompetence or negligence of Wells Fargo.

The Complaint then describes the foreclosure proceedings which allegedly began in, or around, June 16, 2009. Per the Complaint, the first foreclosure was filed by US Bank (as principal, per the Complaint) and Wells Fargo (as US Bank's agent, per the Complaint) but later voluntarily dismissed on January 3, 2011 because defective, "robo-signed" affidavits were utilized by the Substitute Trustees. As for the second foreclosure case, Plaintiffs assert that Wells Fargo did not have standing to file it because the "[DOT] was removed from the [securitized trust that previously held the DOT] on January 1, 2012" and the Securitized Trust "terminated . . . on January 25, 2012" and had "ceased to exist by February 21, 2012, the date the [foreclosure] case was filed."[14] Relying upon the alleged termination of the Securitized Trust and the Exhibits listed in footnote 14, Plaintiffs allege that the "[DOT] was paid off on January 1, 2012". Needless to say, that allegation is not true in light of the other assertions in the

---

[13] The Complaint does not appear to distinguish between Wells Fargo Bank and Wells Fargo Servicer. From this point forward, they will be collectively referred to as Wells Fargo.

[14] This allegation is purportedly supported by Exhibits 2A (Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-4 – Certificate Distribution Summary), 2B (Collateral Statement) and 2C (Loan Level Data) attached to the Complaint.

Complaint and Mr. Howes own testimony under oath.[15]  Transcript of Hearing at 19 (Jan. 27,

2014) (Main Case, Dkt. No. 130).  Plaintiffs finally assert that the second foreclosure was on the

verge of dismissal for something akin to a failure to prosecute when Mr. Howes commenced the

Main Case.

The Howes wrap up their factual allegations with a summary of the events in the Main

Case and the claims that (1) they received no notice from Wells Fargo of the transfer of either the

Note or the right to service the DOT, (2) they received no communication from either Carrington

or Christiana regarding their asserted interest in, and right to enforce, the DOT other than the

notices filed in the Main Case and (3) they "do not know the identity of the rightful owner of the

Note" and that, on information and belief, "none of the Defendants are in possession of the

Note."

Count I of the Complaint asserts that Wells Fargo committed fraud and relies upon

Section 105 of the Code and Rule 9011 as its legal underpinning.[16]  The essence of Count I is

paragraph sixty-seven (67) which states:

> Wells Fargo filed its Amended Claim as creditor with the intent to
> defraud this Court, the Debtor, and the estate created by the
> Bankruptcy Case, by hiding the fact that the Trust terminated back
> in January 2012 and therefore it was not entitled to collect the
> Second Foreclosure Fees.  Wells Fargo sought to hide Trust
> termination by not attaching to the Amended Claim evidence of
> Trust termination, although required to do so by Bankruptcy Rule
> 3001 and the settlement it reached with the 49 State Attorneys'
> General effective April 5, 2012 . . . .  Wells Fargo failed to disclose
> Trust termination in the Amended Claim to conceal the fact that
> the Second Foreclosure Case was wrongfully filed, contained
> numerous false and fraudulent affidavits regarding standing to

---

[15] However, it may be that, contrary to the Complaint's express language, Plaintiffs contend that the Securitized Trust itself was "paid off" although the particulars of that are at best ambiguous.  Nevertheless, Counsel for Wells Fargo acknowledged that the Securitized Trust had terminated.  Transcript of Hearing at 10 (Jan. 6, 2014) (Dkt. No. 46).

[16] Section 105 is the bankruptcy "All Writs" statute and Rule 9011 is the Bankruptcy counterpart to Federal Rule of Civil Procedure 11.  Neither create independent substantive rights or claims for relief, commonly understood.

foreclose, including the Ownership Affidavit, Declaration
Affidavit, and NIF Affidavit, and the fact that the Trust lacked
standing to file the Claim.

Beyond these conclusory assertions, the balance of Count I is a mish-mosh of allegations regarding allegedly false claims filed by Wells Fargo in other bankruptcy cases, the disparity in strength and resources of banks versus consumer debtors, the general difficulty debtors have in ferreting out the incipient "fraud" that underlies proofs of claim and whether Wells Fargo was entitled to the whopping sum of $2,924.50 in foreclosure fees and costs.

Count II is allegedly grounded upon Sections 105 and 506 of the Code.[17] It elaborates upon the core assertion of the Objection to Claim and asserts that because (a) the Securitized Trust terminated, (b) the Note was not properly endorsed and (c) the original Note has been lost, none of the Defendants have a right under Maryland law to enforce the DOT and Note. Count III is allegedly grounded upon Bankruptcy Rule 3001(c)(2)(D). Here, Plaintiffs seek sanctions against Wells Fargo and US Bank for their failure to attach supporting documents to Claim Nos. 4-1 and 4-2 and then to properly amend the same. [18]

The remaining counts are all allegedly grounded upon non-bankruptcy state or federal law. In summary, they allege the following causes of action:

> (a) Count IV is against Wells Fargo, US Bank and Christiana and
> asserts a claim for unlawful inspection fees pursuant to § 12-1027
> of the Commercial Law Article of the Annotated Code of

---

[17] The primary objective of Section 506 is to determine a creditor's secured status based upon the value of the creditor's interest in estate collateral. Roughly speaking, the value of the collateral will normally dictate the value of the lien, with any excess debt left unsecured.

[18] Rule 3001(c)(2)(D) is a part of a relatively new general directive that requires creditors, particularly secured creditors, to support their proofs of claim with underlying documentation when they are filed. It is worth noting that in the event of non-compliance, subpart (D), relied upon by the Plaintiffs, provides sanctions consisting of barring the claimant from offering into evidence the underlying documentation in a contested matter or adversary proceeding, "unless the court determines that the failure was substantially justified or is harmless . . ." or, if the court concludes it is warranted, an award of "other appropriate relief" including attorney's fees caused by the failure to provide the underlying documentation. Outright denial of the claim is not expressly included as a remedy.

Maryland.  It is asserted by the Plaintiffs that a total of $320 in fees were illegitimate.

(b) Count V is against Wells Fargo, US Bank, "Unknown Defendant", and Christiana and asserts a claim for truth in lending violations under 15 U.S.C. §§ 1639c(h) and 1641(g).  Plaintiffs allege that none of the Defendants, including the "Unknown Defendant", gave them a litany of required notices upon the transfer of the Note and that Plaintiffs suffered actual damages because they did not know (a) the true owner of the Note and (b) did not learn that Defendants lacked standing to file the second foreclosure case.  Plaintiffs also seek statutory damages for each alleged violation.

(c) Count VI is against Wells Fargo, US Bank and Christiana and relies upon the Federal Fair Debt Collection Practices Act and the various alleged "false and deceptive" representations of the Defendants.  Plaintiffs aver that as a result, they have been damaged in wages lost, "lost time from other activities, been afraid they would lose their property to foreclosure, lost hope the government's various foreclosure programs were honest attempts to help them, worried that bankruptcy did not protect them from bogus claims," and have also suffered mental anguish and emotional distress.

(d) Count VII is against Wells Fargo, US Bank, and Christiana and relies upon the Maryland Consumer Debt Collection Act.  This Count avers that the Defendants sought to collect amounts that they knew they were not lawfully entitled to collect and that Plaintiffs have suffered emotional distress and mental anguish as a result.

(e) Count VIII is against Wells Fargo and US Bank and relies upon the Maryland Consumer Protection Act.  Among other things, this Count avers that the Defendants made false representations regarding the "ownership of the Note and monies due" in the foreclosure proceedings and that Plaintiffs have suffered mental anguish as a result.

(f) The final Count, Count IX, relies upon Section 502 of the Code, re-alleges the Complaint in its entirety and objects to Claim Nos. 4-1 and 4-2 on that basis.

On October 9, 2013, Carrington and Christiana filed their Motion to Dismiss Complaint

for Failure to State a Claim (Dkt. No. 5).  They asserted that because Counts One, Three, Four,

11

Five, Six, Seven and Eight do not ask for relief against them, those Counts should be dismissed as to them.  On October 17, 2013, Wells Fargo Bank and US Bank filed their Motion to Dismiss Complaint to Determine Secured Status, Sanctions, and Other Relief (Dkt. No. 8).  They took the position that the Complaint failed to state claim upon which relief can be granted, failed to plead fraud with particularity and was barred by the statute of limitations.  The core of their argument is as follows:

> There is neither harm nor foul here.  Even if the [DOT] was removed from the [Securitized] Trust, or the Trust terminated as alleged on January 25, 2012, Mr. and Mrs. Howes are still indebted to the holder of the Note and [DOT], whoever that might be. There is no allegation that Mr. and Mrs. Howes have paid their loan.  On the contrary, they admit in the Complaint that they are in default thereunder.

Memorandum in Support of Motion to Dismiss Complaint to Determine Secured Status Sanctions, and Other Relief at 9 (Dkt. No. 8-1).

Wells Fargo's prime contention was that because it was the grantor of the Note and DOT to the Securitized Trust, the trust *res* (the rights of a holder of the Note and DOT) simply reverted to Wells Fargo upon termination and Wells Fargo was entitled under Maryland law to either enforce or transfer those rights as it saw fit.[19]

The Court held a hearing on the motions to dismiss on January 6, 2014.  At that hearing, the following colloquy occurred between the Court and Mr. Haeger:

> THE COURT: Why don't you tell me what the fraud is?

> MR. HAEGER: The main fraud is trying to hide the fact that there was no standing to file the foreclosure case.

> THE COURT: How did your clients rely on that? And have they been damaged by it?

> MR. HAEGER: Well the fraud is alleged in connection with fraud on the Court.

---

[19] *See Evans v. Safe Deposit & Trust Co. of Baltimore*, 190 Md. 332 (1948).

THE COURT: No, you say on the debtors, that is what your complaint says. You say it all goes back to when they told us we were going to work out a settlement with you and then they said we couldn't work out a settlement with you. . . .

MR. HAEGER: Well, that is separate – that is correct. That is separate –

THE COURT: . . . So, what is the fraud?

MR. HAEGER: So, I would say that there are two areas. The first area and the most important area is the fraud on the Court by not disclosing the fact that there was no standing to file that second foreclosure case.

THE COURT: Because the trust terminated?

MR. HAEGER: That is correct, Your Honor.

THE COURT: So, what happened to the mortgage or the note after the trust terminated?

MR. HAEGER: The Plaintiffs would love to know.

THE COURT: That is not an answer. As a lawyer, what happened to it?

MR. HAEGER: Well, as a lawyer –

THE COURT: What would be the law in that circumstance?

MR. HAEGER: As I set forth in my response the loan was transferred out of the trust before the trust terminated.

*          *          *

THE COURT: So, you are saying that they are trying to  -- Wells Fargo intentionally misrepresented their status because the trust was terminated?

MR. HAEGER: That is right.

THE COURT: And what were they gaining from that, Covering (sic) up the $2,000 in foreclosure fees?

MR. HAEGER: I have seen people do strange things. And –

THE COURT: No, you are the Plaintiff. What were they gaining from that? Why did they conduct – why did they commit the fraud, per your allegation?

MR. HAEGER: The main motivation would be to preserve the foreclosure, the fact that they filed the foreclosure case that it was a rightful foreclosure when it wasn't, and to preserve the fees they sought to collect as a result of that. You look at their behavior and you scratch your head. What is going on here. Why are they doing what they are doing?

THE COURT: That doesn't make it fraud. Fraud is serious. Fraud allegations are serious business.

Transcript of Hearing at 19-20, 21-22 (Jan. 6, 2014) (Dkt. No. 46).

The parties returned on March 4, 2014 for the Court's oral ruling.  In part relying

upon *Jaimes v. J.P. Morgan Chase*, 2013 WL 677740 (Dist. Ct. N. D. Ill. Feb. 25, 2013),

the Oversigned ruled as follows:

The filing of an incorrect claim is not actionable unless there is a knowing and fraudulent filing.  The Debtor's assertion simple (sic) assumes without explanation that the proof of claim, proofs of claim, were filed to claim fees to which the Defendants were not entitled because the trust terminated.  But there is no explanation as to why trust termination would cut off the right to enforce the note.  And that is the crucial problem with the complaint.

This is especially true under the enlightened analysis of the *Jaimes* case.  If it was wrong for either US Bank or Wells Fargo to claim credit or slash service or status,[20] then the Debtor must proffer who the correct servicer was or, at a minimum, show some colorable injury to him and his wife, as a result of the purported confusion . . . .

What it comes down to is the allegation that this mortgage became a part of the securitization package, and that's not fair.  And therefore, I, the Debtor, have been injured.  That doesn't state a claim for relief and certainly doesn't state a claim for relief for fraud.  Therefore, count one will be dismissed with prejudice.

---

[20] This should read, "claim creditor/servicer status."

Transcript of Hearing at 18, 19 (Mar. 4, 2014) (Dkt. No. 24).

This Court also observed that the remaining causes of action were either partially dependent upon, or intertwined with, the centerpiece "fraud" allegation and they would be dismissed without prejudice for a later determination as to their viability once the Complaint was cleansed of the bogus Count I. Nevertheless, this Court recognized that the multiple transfers of the Note and DOT were at best confusing and the Plaintiffs should receive an explanation from Carrington and Christiana as to the basis for their assertion that they properly stood in the shoes of holder and servicer, respectively. Accordingly, the Order Dismissing required them to provide the Plaintiffs "proof of ownership" supported by "an inventory of documents" within thirty days. The Line and Affidavit was filed to comply with that directive.

Plaintiffs, however, chose not to file an amended complaint and instead filed the First and Second Motions for Reconsideration. As to the dismissal of Count I with prejudice, Plaintiffs' averred that the Court erred in finding that the "foreclosing Trust did not terminate." First Motion to Reconsider at 2. Plaintiffs asserted that because the Trust did terminate, Count I was viable. They also attacked the chain of title leading to Carrington and Christiana in light of the information included in the Line and Affidavit. As indicated above, a hearing was held on July 16, 2014 and the First and Second Motions for Reconsideration were denied. Plaintiffs were given seven (7) days to file either an amended complaint or objection to claim (or both) but instead filed their Notice of Appeal.

## IV.     Jurisdiction and Venue

This Court properly exercised jurisdiction over this Adversary proceeding in accordance with 28 U.S.C. §§ 157(b)(1)(2)(B) and (K) and 1334 and Local Rule 402 of the United States District Court for the District of Maryland. This Court concludes that the preliminary

proceedings conducted so far have not violated the strictures of *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  Venue is proper under 28 U.S.C. § 1409.

## V.    Analysis

### (a)    The Standards that Govern the Application of Federal Rules of Civil Procedure 12(b)(6) and 9(b)

Federal Rule of Civil Procedure 12(b)(6) (Federal Rule 12(b)(6)) is made applicable to bankruptcy proceedings through Rule 7012(b).  Federal Rule 12(b)(6) permits dismissal of a complaint if it, "fails to state a claim upon which relief can be granted."  The fundamental inquiry is whether a plausible claim is stated. As the Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "[A] complaint must state a claim that is plausible on its face" and incorporate "sufficient factual matter" in support of the claim.  See also, *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007).  A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 446 U.S. at 678.  If the complaint does not meet this standard, then it must be dismissed.  Naturally, a complaint should be viewed, "in a light most favorable to the plaintiff," and "all well pleaded allegations" should be accepted.  *Mylan Labs., Inc. v. Matkari,* 7 F.3d 726, 730 (4th Cir. 1993). Nevertheless, the factual allegations must assert a right to relief that rises, "above the speculative level." *Twombly,* 550 U.S. at 555.  When confronted with a meritorious motion to dismiss, plaintiffs cannot rely upon "allegations that are merely conclusory, unwarranted deductions of fact . . . [or] unreasonable inferences."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Moreover, each element of the claim asserted must be supported by proper factual allegations in the complaint.  *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003).  In sum, as observed in *Bender v. Suburban Hosp., Inc.,* 159 F.3d 186, 192 (4th Cir. 1998), while,

16

"notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy."

When fraud is alleged, Federal Rule of Civil Procedure 9(b) (Federal Rule 9(b)) heightens the level of scrutiny.  Federal Rule 9(b) provides that "[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake."  This standard requires, "the who, what, when, where, and how: the first paragraph of any newspaper story."  *U.S. ex. rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009).  The rule is intended to discourage a "sue first, ask questions later" philosophy.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir. 2011).

**(b)      The Reasons why Count I was Dismissed with Prejudice**

Plaintiffs do not dispute that Wells Fargo had the right and power to enforce the Note and Mortgage for the many years they were in default and living in the Residence for free and then during the period when they attempted to negotiate a HAMP modification.  But per the Plaintiffs' theory, the termination of the Securitized Trust brought about a fundamental sea change that permanently altered the landscape.  The logic of Count I is that (a) the Securitized Trust terminated on January 25, 2012, (b) after its termination, Wells Fargo's standing to foreclose (status as a creditor) was negated, (c) Wells Fargo therefore did not have standing to file Claim Nos. 4-1 and 4-2, (d) Wells Fargo filed those claims to "hide" the fact that it did not have standing to file either the foreclosure or the proofs of claim, (e) Wells Fargo should have filed documented proof of the termination of the trust with Claim Nos. 4-1 and 4-2 to confirm its lack of standing and (f) Wells Fargo's actions in filing Claim Nos. 4-1 and 4-2 were all to the ultimate end of covering up foreclosure fees ($2,924.50) that are illegitimate because of Wells

Fargo's lack of standing. As "theories of the case" go, this is mind-bendingly obtuse. Perhaps purposefully so. Nevertheless, as a blueprint for a fraud claim it amounts to patent nonsense.

The keys to the contention are (a) that Wells Fargo had no right to foreclose or file Claim Nos. 4-1 and 4-2 because of the Securitized Trust's termination and (b) Wells Fargo was legally bound to include documentary confirmation with the two claims that it did not have standing to either foreclose or file the two claims. However, it is just as (and frankly more) plausible to conclude that Wells Fargo reasonably believed it had every right to enforce the Note and DOT, that the foreclosure fees were legitimate and recoverable and that Claims Nos. 4-1 and 4-2 were filed to achieve those simple ends. At the core of the dismissal with prejudice of Count I is the Complaint's irremediable failure to explain with precision beyond rhetoric and hyperbole why Wells Fargo's holding itself out as a creditor by filing proofs of claim amounts to fraud.

Wells Fargo's actions could only possibly be wrongful if it knew or should have known that it had no right to file the proofs of claim, *because some other, identifiable true holder of the Note and DOT was entitled to do so*, yet filed the claims anyway in contravention of that holder's rights.[21] However, during argument Mr. Haeger could not (or would not) articulate what happened to the Note and DOT when the Securitized Trust terminated: did they revert to the original owner, were they magically transferred to some other entity or did they simply disappear into nothingness? This point is crucial because without a precise allegation as to the ultimate disposition of the Note and DOT that plausibly establishes that Wells Fargo knew or should have known that it had no enforcement rights – that its attempted collection and enforcement of the

---

[21] That still would not amount to a fraud claim *in favor of the Plaintiffs* for the reasons explained, and noted *infra*, in *Jaimes*. If the mysterious, unidentified "true holder" exists, then surely that entity would be the only one with standing to sue Wells Fargo. Nevertheless, there would still be no damages; i.e., payments wrongfully accepted, because Mr. and Mrs. Howes have not, by Mr. Howes' estimate, paid the Note and DOT for over seven years and continue to refuse to pay it. *See* Transcript of Hearing at 19 (Jan. 27, 2014) (Main Case, Dkt. No. 130).

indebtedness was at odds with the rights of the true holder – the allegation of wrongful conduct by Wells Fargo is mere fanciful malarkey.

This was the precise issue before the court in *Jaimes*. The plaintiff husband and wife homeowners sued JPMorgan Chase (Chase) for fraud as a result of its collection, and attempted collection, of their mortgage payments.[22] Plaintiffs' alleged in part that because the securitized trust had terminated, Chase (which became owner/holder of the obligation through its purchase of the assets of the failed Washington Mutual Bank, F.A.) lost standing to collect the debt. Plaintiffs asserted that the trust's assets were distributed to the certificate holders (beneficiaries) of the trust upon termination and that the certificate holders became the rightful owners and holders of the note and mortgage. Chase therefore did not have the right or authority to collect payments from the plaintiffs. *Jaimes*, 2013 WL 677740 at *1. The Court held:

> This is where the Plaintiffs' theory breaks down. Because Plaintiffs argue that "WaMu lost all interest in the loan" at the Trust's termination, they necessarily argue that WaMu lost its status as the loan's servicer. But Plaintiffs do not argue that a different loan servicer was, or should have been, servicing their debt after the Trust's termination. This is not facially plausible.
> First, a trust's termination does not terminate the payment obligations on the mortgages in the trust. A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgages loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust.
>
> *            *            *
>
> Plaintiffs do not argue that they were billed twice for the same loan payment obligation beginning in September 2008, nor do they contend that Chase failed to credit them for the payments they made to Chase after Chase billed them.
>
> *            *            *

---

[22] As the Howes did here, Mr. and Mrs. Jaimes also sued Chase for a bushel of consumer protection violations all based upon Chase's "fraudulent" collection of the amounts due under the note.

> In short, it is insufficient for Plaintiffs to plead that the Trust's termination destroyed WaMu's servicing rights and that Chase fraudulently serviced the debt beginning in September 2008 without offering any allegation as to who became the servicer of their debt upon the Trust's termination.  Plaintiff's theory that their loan obligations terminated when the Trust was terminated because the servicing rights on their debt were not sold or transferred to another entity does not provide the Court with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

*Jaimes,* 2013 WL 677740 at *4, *5.

Accordingly, the complaint was dismissed.[23]  Count I of Mr. and Mrs. Howes' Complaint fails for the same reason.  Because it does not (and cannot consistent with Rule 9011) identify the entity whose rights are being usurped by Wells Fargo it cannot assert a legitimate fraud claim, even if Plaintiffs had standing to enforce such a claim.  Assuming state law applies,[24] to prove fraud in Maryland a plaintiff must establish the following:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 703 (1998).

Plaintiffs allege a "false representation" but do not allege a plausible explanation of why Wells Fargo's holding itself out as their creditor is a knowingly false statement beyond the termination of Securitized Trust.  Likewise, there are no allegations that Plaintiffs relied upon

---

[23] The court gave a parting warning to plaintiffs' counsel regarding the consequences that might ensue under Federal Rule Civil Procedure Rule 11 if a frivolous amended complaint was pursued.

[24] *Butner v. United States*, 440 U.S. 48 (1979); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

20

Wells Fargo's representation and were damaged as a result. Indeed, Plaintiffs cannot allege a non-frivolous damage claim as they have not paid this debt for over seven years.

As for the assertion that Wells Fargo's filing of the proofs of claim constituted a "fraud on the court", that occurs:

> [W]here it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*Aoude v. Mobil Oil Corp,* 892 F.2d 1115, 1117 (1st Cir. 1989) (plaintiff's preparation of a bogus, fabricated agreement, and the knowing use of it by his counsel in support of their complaint, constituted fraud on the court). There is nothing alleged in the Complaint that plausibly supports the notion that Wells Fargo set in motion an "unconscionable scheme calculated to interfere" with this Court's process by filing Claim Nos. 4-1 and 4-2. Without a legitimate, non-frivolous allegation that Wells Fargo knowingly acted in contravention of some other entity's right to enforce the Note and DOT, a claim of "fraud on the court" cannot be alleged in good faith. Whether Count I is characterized as fraud on the court or the Howes, it is patently frivolous and was dismissed for that reason. Hence, Plaintiffs were given a final deadline to file an amended complaint or suffer dismissal with prejudice.

**(c)    The Reasons why the Relevant Deadlines for Filing either a Legitimate Amended Complaint or Objection to Claim were Set by the Court**

While not expressly incorporated in the 7000 series of Bankruptcy Rules, Federal Rule of Civil Procedure 1 calls for a construction and administration of the rules, "to secure the just, speedy, and inexpensive determination of every action and proceeding." Beyond the general directive, there are special reasons underlying the need for alacrity in this Adversary Proceeding.

Mr. Howes commenced the Main Case on November 15, 2012.  Section 1322(d) mandates that the term of a Chapter 13 plan may not exceed five years beyond the date of the first payment.  *In re Grant*, 428 B.R. 504, 508 (Bankr. N.D. Ill. 2010); *In re Jackson,* 189 B.R. 213, 214 (M.D. Ala. 1995).  Mr. Howes began making his monthly plan payments to the Trustee long ago but the Main Case is now two years old.  Moreover, confirmation of the Amended Plan has necessarily been put "on hold" pending the outcome of this litigation.  While Mr. Haeger suggested at the last confirmation hearing that the Amended Plan could be confirmed notwithstanding this litigation because the Howes had overpaid the Trustee, *see* Transcript of Hearing at 4 (Mar. 19, 2014) (Main Case, Dkt. No. 131), it is equally true that those payments were made without the corollary burden of the Howes making regular monthly payments of $4,870 against the Note and DOT along with payments sufficient to timely cure the steadily increasing arrears of at least $200,000.  This Court exercised its discretion against confirmation on the assumption that some entity is entitled to receive payments from the Howes and the Howes will have a significant monetary burden to resolve when the time comes to pay the piper.[25]

Mr. Howes testified at the January 27, 2013 hearing on Mr. Haeger's fees as follows:

> THE COURT: … In other words, you're not claiming that you don't owe the money, right? Or are you?

> THE WITNESS: No, I am not claiming that I do not owe my mortgage, Your Honor.

> *            *            *

> THE COURT: So, in order to keep your house, you need to pay the mortgage, correct?

> *            *            *

> THE WITNESS: I understand that, Your Honor.

---

[25] All Defendants agree that Carrington is the holder of the Note and DOT and Christiana is the servicer.

*     *     *

THE COURT: So you don't believe that any of the defendants that you're (sic) sued should receive payments for the mortgage?

THE WITNESS: That is correct, Your Honor.

THE COURT: But you believe you do owe money to someone.

THE WITNESS: That is correct, Your Honor.

*     *     *

THE COURT: And, before you filed bankruptcy, you hadn't made payments for how long? Normal payments required by the mortgage.

THE WITNESS: I'm not sure of the exact time but seven to ten years.

THE COURT: Seven to ten years.

THE WITNESS: It was 2003.

Transcript of Hearing at 18, 19 (Jan. 27, 2014) (Main Case, Dkt. No. 130).

The Objection to Claim was filed on April 2, 2013, approximately five months after Mr. Howes' bankruptcy filing. The hearing on it was held on June 17, 2013 and Mr. Haeger indicated he would supplant the Objection to Claim with a complaint to attack the lien of the DOT against the Residence. However, the Complaint was not filed until September 3, 2013, the day before the Debtor's confirmation hearing. The hearing on the sufficiency of the Complaint was held on January 6, 2014 and an oral ruling given on March 4, 2013. Count I was dismissed with prejudice and Mr. Haeger was told how the matter would be handled going forward – Carrington and Christiana would be required to document their claimed entitlement to enforce the Note and DOT and Plaintiffs would be given sixty days to file either an amended complaint, an objection to claim, or both. Yet, the filings of the First and Second Motions to Reconsider

23

unilaterally, and effectively, extended the Plaintiffs' deadline until at least the July 16, 2014 hearing on those motions.  Hence, the Plaintiffs had over four months from the March 4, 2014 hearing to bring their claims in line with plausibility (if possible) and file a legitimate amended complaint.[26]  Upon the oral denial of the two motions for reconsideration, Plaintiffs were given an additional seven days to file an amended complaint, or objection to claim, upon pain of dismissal.[27]  Instead of complying and prosecuting their alleged claims, Plaintiffs chose to note an appeal.

This Court is charged with the discretion to manage its docket in a fair and effective manner to promote the ends of justice.  That includes the denial of leave to amend if further amendment would be futile.  *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013).  As the court stated:

> Because the Zadroznys' claims . . . are factually and legally implausible, denial of leave to amend lay within the district court's discretion. See *Mirmehdi v. United States,* 689 F. 3d 975, 985 (9th Cir. 2012) ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile . . . ."), *as amended* (citation omitted).  This is particularly true as the Zadroznys had a prior opportunity to amend their complaint.

See also, *Jaimes*, at *6; *In re Nordeen,* 495 B.R. 468, 489 (9th Cir. BAP 2013).

Plaintiffs have been using Section 362(a)'s automatic stay as a shield against foreclosure since November 12, 2012.  They have likewise been using the pendency of the Complaint to

---

[26] The remaining counts of the Complaint also had to be cleansed of the detritus of the bogus fraud allegations. Those allegations run like toxins  through Count III ("Since the underlying foreclosure cases were filed by entities that lacked standing . . . ."), Count V ("Upon information and belief, the Note was paid off on January 1, 2012, as stated in the Loan Level Data report . . . "), Count VI ("US Bank caused the Second Foreclosure Case to be filed against Plaintiffs on February 21, 2012, falsely claiming to be the owner of the Note. Wells Fargo sought to hide the Trust termination from the Howes by lying about their HAMP eligibility . . . ."), Count VIII (". . . by falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure . . . by concealing Trust termination . . . ") and Count IX, where every allegation of the Complaint is incorporated and re-alleged.

[27] The Line and Affidavit is not a proof of claim and hence Plaintiffs' "objection" to it (included in the First Motion to Reconsider) is insufficient under Section 502(a) and Rule 3007(a) to object to Claim No. 4-2 and commence a contested matter.

stretch their ongoing default *ad nauseum*.  They have had thirteen months since the filing of the Objection to Claim to pursue legitimate claims in earnest.  Hence, the Oversigned concluded on July 16, 2014 that the time for unwarranted, strategic delay (and frivolous claims) was over.  An objective observer, watching this case from November 12, 2012, could reasonably conclude that the Complaint, written in the lawyer crafted patois of victimhood, is nothing more than, "sound and fury, signifying nothing."[28]  In other words, that Plaintiffs' strategy is to spin a tale suitable enough to delay things for as long as possible with the hope that Defendants will eventually grow weary of the contest and agree to a favorable settlement.  The commercial chaos and sorry history of the Great Recession lends itself to that approach.  Cases have been filed throughout the nation that rely upon the premise that securitization acted as magical alchemy to nullify homeowner loan obligations.  *Nordeen*, 495 B.R. at 478 (and cases cited therein); *Jaimes* at *4 (and cases cited therein).  But this is the real world and not a fanciful one.  Having been sued, the Defendants are entitled to (a) have the Complaint pruned of any chaff and (b) any legitimate claims expeditiously brought to trial.  Accordingly, the seven day deadline for filing an amended complaint was set and as it was not adhered to, the Complaint was dismissed with prejudice.[29]

## VI.    Conclusion

In conclusion, Plaintiffs were given more than a reasonable amount of time to pursue their alleged claims.  Having failed to do so, the Complaint was dismissed with prejudice.

**End of Opinion**

---

[28] WILLIAM SHAKESPEARE, MACBETH act 5, sc. 5.

[29] Among other things, dismissal with prejudice will mean that Claim No. 4-2 will be deemed allowed under Section 502(a), Plaintiffs will have to commence regular monthly payments to Carrington and Christiana and file an amended plan that satisfies the Note arrears in a manner allowed by the Code.